UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARY BRIDGES,
BOBBY GORDON,  AND
JOHNNIE GRIFFIN, ALL
INDIVIDUALLY AND ON BEHALF OF 345
OTHER NAMED PLAINTIFFS                                    PLAINTIFFS


VS.                              CIVIL ACTION NO. 3:13CV457TSL-JCG


RICHARD A. FREESE; TIM K.
GOSS; SHEILA M. BOSSIER;
DENNIS C. SWEET, III; FREESE
AND GOSS PLLC; SWEET AND FREESE
PLLC; BOSSIER AND ASSOCIATES PLLC;
AND DENNIS C. SWEET, D/B/A SWEET
AND ASSOCIATES, PLLC                                      DEFENDANTS

VS.

DON A. MITCHELL                              THIRD-PARTY DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs
Mary Bridges and Bobby Gordon for class certification pursuant to
Federal Rule of Civil Procedure 23.  Defendants Richard A. Freese,
Tim K. Goss, Sheila M. Bossier, Dennis C. Sweet, III, Freese and
Goss PLLC, Sweet and Freese PLLC, Bossier and Associates PLLC and
Dennis C. Sweet d/b/a Sweet and Associates PLLC (hereafter
defendants) have responded in opposition to the motion.  The
court, having considered the memoranda of authorities, together
with attachments, submitted by the parties, concludes the motion
should be denied.

Plaintiffs Mary Bridges, Bobby Gordon and Johnnie Griffin, along with 345 others, were previously represented by defendants Freese, Goss, Sweet and Bossier (and their respective law firms) and by third-party defendant Don Mitchell in three separate lawsuits brought against, *inter alia*, BorgWarner Corporation, in which the plaintiffs sought to recover damages for injuries they claimed to have suffered as the result of the alleged release and improper disposal and elimination of those certain toxic chemicals (polychlorinated biphenyls, or PCBs) at a Crystal Springs manufacturing facility.[1]  Plaintiffs' counsel ultimately reached a global settlement of nearly $28,000,000 with BorgWarner on behalf of the 348 plaintiffs (the "Filed Claimants"), and on behalf of an additional 2,471 clients who were not plaintiffs in the PCB litigation but who also claimed they were injured from exposure to PCBs (the "Unfiled Claimants").  The terms of the settlement were finalized in mid-2010 and in early 2011, defendants began the process of disbursing settlement funds to the PCB claimants, filed and unfiled.

---

[1]    <u>Alford, et al. v. Kuhlman Corp., et al.</u>, Cause No. 3:07-CV-756 (S.D. Miss.) (filed Dec. 27, 2007 on behalf of 208 plaintiffs, including Mary Bridges and Johnnie Griffin); <u>Allen, et al. v. Kuhlman Corp., et al.</u>, Civ. A. No. 2008-0312 (Cir. Ct. Copiah Cty., Miss.) (filed Aug. 8, 2008, on behalf of 40 named plaintiffs, including Bobby Gordon); and <u>Alexander, et al. v. Kuhlman Corp., et al.</u>, Civ. A. No. 2008-0311 (Cir. Ct. Copiah Cty.) (filed Aug. 7, 2008 on behalf of 100 named plaintiffs).

On July 23, 2013, plaintiffs Bridges, Gordon and Griffin filed the present lawsuit for themselves and on behalf of a putative class comprised of the other 345 former clients represented by defendants, asserting myriad claims relating to defendants' representation of plaintiffs in the PCB litigation, with particular reference to their handling of litigation expenses and disbursement of settlement proceeds.  The complaint purports to set forth claims for breach of fiduciary duty, tortious breach of contract, fraudulent inducement, conversion, tortious interference with contract, unjust enrichment and bad faith based on allegations that defendants failed to properly allocate litigation expenses among the Filed and Unfiled Claimants; charged plaintiffs expenses that were exorbitant and unreasonable; converted funds from the PCB settlement for their own personal and unjust benefit; had an undisclosed conflict of interest related to their ongoing representation of the State of Mississippi for recovery of Medicaid and Medicare liens in other mass tort litigation, while at the same time negotiating the PCB plaintiffs' Medicaid and Medicare liens; improperly paid expenses and fees to themselves before disbursing settlement funds to plaintiffs; and unreasonably delayed payment to plaintiffs so as to use the settlement funds to further defendants' own monetary interests.[2]

---

[2]    Plaintiffs' allegations and the background facts are more fully set forth in this court's opinion in this cause entered

3

Plaintiffs are now before the court seeking certification of a

plaintiff class defined as follows:

> Those 348 individuals that entered into a settlement
> agreement with BorgWarner Corporation in March of 2010
> arising out of the civil actions of James Alford, et al.
> Kuhlman Corporation, et al., Cause No.
> 3:07-cv-00756-HTW-LRA, In the United States District
> Court for the Southern District of Mississippi; Dexter
> Allen et al. v. Kuhlman Corporation et al.; Civil Action
> No. 2008-0312 and Percy Alexander et al. v. Kuhlman
> Corporation et al., Civil Action No. 2008-0311, In the
> Circuit Court of Copiah County Mississippi, said
> purported class members being legally represented by the
> Defendants in the consummation of said settlement and in
> the negotiation of Medicare and Medicaid liens allegedly
> asserted against said settlement funds.

> Class certification is governed by Rule 23 of the Federal

Rules of Civil Procedure.  To be certified under Rule 23, the

class must first satisfy four threshold requirements of Rule

23(a):

> (1) numerosity (a "class [so large] that joinder of all
> members is impracticable"); (2) commonality ("questions
> of law or fact common to the class"); (3) typicality
> (named parties' claims or defenses are typical ... of
> the class"); and (4) adequacy of representation
> (representatives "will fairly and adequately protect the
> interests of the class").

<u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 613, 117 S. Ct.

2231, 138 L. Ed. 2d 689 (1997) (alterations in original) (quoting

Fed. R. Civ. P. 23(a)).  If the Rule 23(a) prerequisites are met,

---

on June 23, 2014 denying defendants' motion to disqualify
plaintiffs' counsel Chuck McRae, and the court's October 6, 2014
opinion denying third-party defendant Don Mitchell's motion to
dismiss the third-party complaint.

the proposed class must also satisfy the requirements of Rule

23(b)(1), (2) or (3).  Rule 23(b)(1) provides for certification of

a mandatory class, whose members have no right to opt out, when

"prosecuting separate actions by or against individual class

members would create a risk" of

>           (A) inconsistent or varying adjudications with
>           respect to individual class members that would
>           establish incompatible standards of conduct
>           for the party opposing the class; or
>           (B) adjudications with respect to individual
>           class members that, as a practical matter,
>           would be dispositive of the interests of the
>           other members not parties to the individual
>           adjudications or would substantially impair or
>           impede their ability to protect their
>           interests....:

Fed. R. Civ. P. 23(b)(1); see also In re Katrina Canal Breaches

Litig., 628 F.3d 185, 191 (5th Cir. 2010).  Rule 23(b)(2) allows

for certification where "the party opposing the class has acted or

refused to act on grounds that apply generally to the class, so

that final injunctive relief or corresponding declaratory relief

is appropriate respecting the class as a whole."  Fed. R. Civ. P.

23(b)(2).  Finally, class certification under Rule 23(b)(3)

requires that "questions of law or fact common to class members

predominate over any questions affecting only individual members,"

and that "a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."  Fed. R.

Civ. P. 23(b)(3).

The named plaintiffs, as the parties seeking certification, bear the burden of proof to establish that the proposed class satisfies the requirements of Rule 23.  McManus v. Fleetwood Enterprises, Inc., 320 F.3d 545, 548 (5ᵗʰ Cir. 2003) (citation omitted); see Wal-Mart Stores, Inc. v. Dukes, --- U.S. ----, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) ("Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").  Plaintiffs contend they have sustained their burden as they have shown that their proposed class meets all the requirements of class certification under Rule 23(a) and also satisfies Rule 23(b)(1), (2) and (3).  Defendants, however, argue that plaintiffs' proposed class meets *none* of the prerequisites to a class action under Rule 23(a) or (b).  Having considered the parties' arguments, the court is satisfied that plaintiffs have adequately demonstrated commonality, and perhaps typicality; but in the court's opinion, they have not established the requirement of numerosity/impracticability or of adequacy of representation.

Addressing the Rule 23(a)(2) requirement of commonality, the Fifth Circuit recently explained that in the wake of the Supreme Court's decision in Wal-Mart, it is no longer sufficient merely to show that "there is 'at least one issue whose resolution *will*

*affect all or a significant number of the putative class members.'"* <u>M.D. ex rel. Stukenberg v. Perry</u>, 675 F.3d 832, 839-40 (5th Cir. 2012) (quoting <u>Forbush v. J.C. Penney Co., Inc.</u>, 994 F.2d 1101, 1106 (5th Cir. 1993)).  Instead, to satisfy the requirement of commonality,

> the claims of every class member must "depend upon a common contention .... of such a nature that it is capable of classwide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u>; <u>see</u> <u>id.</u> ("'What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'") (quoting Nagareda, 84 N.Y.U. L. REV. at 132).  Thus, the commonality test is no longer met when the proposed class merely establishes that "there is 'at least one issue whose resolution *will affect all or a significant number* of the putative class members.'"  <u>Forbush</u>, 994 F.2d at 1106 (emphasis added) (citation omitted). Rather, Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution "will *resolve* an issue that is *central to the validity* of each one of the [class member's] claims in one stroke." <u>Wal-Mart</u>, 131 S. Ct. at 2551 (emphasis added).

<u>Stukenberg</u>, 675 F.3d at 840.  Defendants note the Supreme Court's observation in <u>Wal-Mart</u> that "'[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers,'" 131 S. Ct. at 2551 (quoting Nagareda, 84 N.Y.U. L. REV. at 132); and they argue that the purported class is rife with such "dissimilarities".  In particular, they contend that plaintiffs' charge of fraudulent

misrepresentation necessarily raises individual issues of reliance, making each plaintiff's situation different from the next.  They further contend that plaintiffs' assertion of a claim for the tort of outrage/intentional infliction of emotional distress[3] which cannot be resolved in "one stroke" as it requires individual consideration of each claimant's damages.

Despite defendants' objection, the court is satisfied, even under the more stringent explication of commonality emanating from Wal-Mart, that this requirement is met.  All of the proposed class members assert claims that improper deductions were made from their share of the PCB settlement for illegitimate expenses and further, that even the legitimate expenses of the litigation were not properly allocated among them and the Unfiled Claimants.  In addition, all proposed class members assert identical claims against defendants for breach of fiduciary duty and conversion relating to the deposit of the settlement proceeds in a non-interest bearing account in an out-of-state bank owned by defendant Richard Freese.  "[These] contention[s] [are] 'common' to all the class members, [are] "central" to the validity of their claims, and [are] "capable" of classwide resolution[,]" and thus

---

[3]     In Mississippi, the tort of "outrage" is considered equivalent to a claim of intentional infliction of emotional distress.  See Buchanan v. Gulfport Police Dept., No. 1:08CV1299LG-RHW, 2012 WL 1906523, *12 n.6 (S.D. Miss. May 25, 2012).

are sufficient to satisfy Rule 23(a)(1).  In re Deepwater Horizon,
739 F.3d 790, 811 (5th Cir. 2014) (explaining that "a 'contention'
regarding the class members' injury is sufficient to satisfy Rule
23, so long as the party seeking certification can show that this
contention is 'common' to all the class members, is 'central' to
the validity of their claims, and is 'capable' of classwide
resolution) (citing Wal-Mart).

   The requirement of typicality is also satisfied.  As one
court has recently explained:

> Typicality requires a showing that the claims of the
> named plaintiffs are in fact those asserted as the
> common class claims.  In this sense, typicality is
> commonality addressed from the perspective of the named
> plaintiffs. Commonality requires showing that, in fact,
> all members of the proposed class share a common claim,
> the validity of which can be determined on a classwide
> basis.  Typicality requires showing that, in fact, the
> proposed representatives have that claim.  Often, once
> commonality is shown typicality will follow as a matter
> of course.

M.D. v. Perry, 294 F.R.D. 7, 29 (S.D. Tex. 2013).  In this sense,
the named plaintiffs' claims are typical of the claims identified
above that are common to all class members.  However, while the
requirements of commonality and typicality are met, the remaining
requirements for class certification have not been met.

   Plaintiffs argued in their initial motion for class
certification (filed May 1, 2014) that the requirement of
numerosity, i.e., a class so large that joinder of all members is
impracticable, is met, not just because of the number of proposed

class members – 348 – but also because "joinder of each of these
348 proposed claimants would be impracticable."  In this vein,
they argued that since the purported class members have identical
claims regarding defendants' charged expenses, conversion of
settlement funds and conflict of interest regarding Medicare and
Medicaid liens, then trying each of their claims individually
"would be impracticable and would be a waste of judicial
resources" and that "[j]udicial economy would certainly be served
by addressing all the claims of the purported class members in a
single class action to avoid the multiplicity and possible
contradictory judgments inherent in 348 separate lawsuits in
various counties and states."  In their supplemental motion for
class certification, filed November 13, 2014, plaintiffs assert,
as an additional basis for finding impracticality of joinder, that
defendants' own actions have rendered individual suits by the 348
class members impractical under Rule 23(a).  More specifically,
they state that when plaintiffs' counsel began initiating
communication with former PCB clients, defendants sent "cease and
desist" letters to plaintiffs' counsel threatening them with
criminal, civil and ethical repercussions if they had any further
communication with the former PCB clients.  Plaintiffs insinuate
that defendants' threats have put them in the position of having
to proceed as a class rather than with individual claims since

defendants have taken the position that plaintiffs' counsel are precluded from contacting the former PCB clients directly.

In the court's opinion, however, plaintiffs' counsel's own conduct belies plaintiffs' assertion that joinder is impracticable.  First, as defendants aptly point out, plaintiffs' counsel herein has filed two other lawsuits, each with approximately 300 individual Unfiled Claimants, against defendants challenging various aspects of the settlement distribution (on some of the same bases as are asserted in this case).  See Patty Windom, et al. v. BorgWarner, Inc., No. No. 3:13-cv-00741-CWR-FKB (S.D. Miss.) (approximately 285 individual plaintiffs), and Carlos Ivory, et al. v. Freese & Goss, PLLC, et al.; No. 3:13-00740 HTW-LRA (approximately 320 individual plaintiffs).  Moreover, while this case has been pending – and indeed, while the motion for class certification has been pending – plaintiffs' counsel herein has filed a number of separate lawsuits on behalf of individual Filed Claimants, i.e., members of the proposed plaintiff class, and in one of those cases has joined 111 individual claimants.  See Alford v. Freese and Goss, et al., Cause No. 14-950 (Rankin Cty. Chancery Ct. May 21, 2014) (one PCB Filed Claimant); Wilson v. Freese and Goss, et al., Cause No. 14-961 (Rankin Cty. Chancery Ct. May 22, 2014) (three PCB Filed Claimants); Hartley v. Freese and Goss, et al., Civ. Action No. 3:14CV600DPJ-FKB (S.D. Miss. May 23, 2014) (110 PCB Filed

11

Claimants).  In other words, plaintiffs' counsel has filed separate individual actions on behalf of nearly one-third of all prospective class members.  Given all these circumstances, the court concludes that plaintiffs have failed to demonstrate the impracticability of joinder for purposes of Rule 23(a)(1).

The adequacy requirement of Rule 23(a)(4) mandates an inquiry into both "[1] the zeal and competence of the representative's counsel and ... [2] the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees[.]"  Berger v. Compaq Computer Corp., 257 F.3d 475, 479 (5th Cir. 2001).  Furthermore, "it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel."  Id. at 482-83 (citation omitted).  Thus, the class representative must possess a sufficient level of knowledge and understanding to be capable of "controlling" or "prosecuting" the litigation.  Id. (citation omitted).

Apart from their arguments regarding the adequacy of class counsel, plaintiffs declare that two of the named plaintiffs have exhibited sufficient knowledge to satisfy the requirements of Rule 23(a)(4).[4]  Having reviewed the evidence, though, the court is not persuaded.  No serious argument can be made that Bobby Gordon is

---

[4]    Although Johnnie Griffin is a named plaintiff, no argument is made that he is an adequate class representative. Plaintiffs' arguments relate only to Bridges and Gordon.

an adequate class representative.  The deposition excerpts presented by plaintiffs in support of the class certification motion demonstrate that Gordon has barely a clue what this case is about.  That is, she lacks even a basic understanding of the litigation.

Mary Bridges' testimony reflects that she is more knowledgeable than Gordon.  However, she, too, exhibits a concerning lack of familiarity with or understanding of the allegations of the case.  Bridges stated in her deposition that she "think[s] this case is about monies that we did not receive as clients from the lawyers" in the PCB litigation; but it appears she is unaware of the factual basis for the allegation that monies are due her and the putative class members.  Bridges testified that at the time of the PCB settlement, she did not receive as much money as she thought she would based on the BorgWarner settlement matrix, which assigned points for specific illnesses. Based on that matrix, Bridges had thought she would get $10,000 to $12,000, but instead she got only about $5,000 to $7,000.  This lawsuit, according to Bridges, is based upon her belief that "the numbers just seemed wrong."  Even now, when this case has been pending for well over a year, and after she has had a number of conversations with proposed class counsel (including an hour-and-a-half meeting prior to her deposition), it is apparent that Bridges does not know what this case is about.  She specifically

13

stated that she "is not sure" whether she is claiming misrepresentations were made to her.  Further, she gave no indication that she had any information or understanding that her claims involved improperly charged and/or allocated expenses (and indeed, she seemed to think that the problem with the settlement is that she was not given proper credit/points under the settlement matrix for her specific illnesses).[5]  She also gave no hint that she believes she was deprived of interest on her settlement funds (or that the lawsuit includes any such claim), or that she had any basis other than a flawed application of the settlement matrix for contending that monies are due her or the members of the proposed class.  In short, she understands nothing more than that there were (or may have been) some "problems" with the settlement payments (the nature of which she is completely

---

[5]     Ms. Bridges testified as follows:
Q.  Are you aware of the manner in which any damages awarded would be allocated among class members?
A.  I don't know if they would go back through all of your problems and do it the way they did it the first time, or just give us all equal – equal amounts of money that's just owed to us.  I mean, I don't know.
...
Q.  Okay.  Do you have an opinion as to how damages should be allocated if awarded in this case?
A.  I would suggest that every – each client's paperwork be re-evaluated and see if the scales were done properly or the amounts pertaining to the injuries – of the client.
It is evident from her responses to these questions that Ms. Bridges believes the problem to be that the PCB claimants did not receive the proper amount in settlement based on the injuries they sustained.

unaware), and that as a result, she and the proposed class members may be due "some of the money that [they] did not get before."

The court recognizes, of course, that class representatives are not required to have detailed knowledge of the facts and legal theories underlying their claims and that they are entitled to rely to some extent on counsel. See Berger, 257 F.3d at 483 n.15 (citing Longden v. Sunderman, 123 F.R.D. 547, 557–58 (N.D. Tex. 1988)("In analyzing the 'vigorous prosecution' element of the adequacy requirement, the Court concludes that the qualifications and experience of class counsel is of *greater* consequence than the knowledge of class representatives.") (emphasis added). However, in all cases, "the class representatives' level of knowledge remains a relevant factor," Berger, 257 F.3d at 483 n.15, and to qualify as adequate class representatives, they should "know more than that they were involved in a bad business deal," id. at 483 (internal quotation mark and citation omitted). That cannot be said of either Gordon or Bridges. Accordingly, irrespective of the qualifications of class counsel, the court concludes that the named plaintiffs are not adequate class representatives.[6]

---

[6]     Defendants have moved to disqualify Chuck McRae as counsel pursuant to the Mississippi Rules of Professional Responsibility due to alleged conflicts of interest. On the basis of the arguments set forth in that motion, they maintain that Mr. McRae cannot adequately represent the proposed class. In light of the court's conclusion that the named plaintiffs' insufficient level of knowledge and understanding of the litigation precludes them from representing the proposed class, the court, for purposes of the motion to certify class, need not resolve the issue of Mr.

For the foregoing reasons, the court concludes that plaintiffs have failed to satisfy all the requirements of Rule 23(a) and that for this reason, their motion for class certification should be denied.[7]

Accordingly, it is ordered that plaintiffs' motion for class certification is denied.

SO ORDERED this <u>26TH</u> day of March, 2015.

---

McRae's qualification to represent the proposed class.  In any event, the court does note that defendants have not contended that Mr. McRae's co-counsel would not be an adequate representative.

[7]     The court would note further that even if the plaintiffs had satisfied the requirements of Rule 23(a), they have not demonstrated that a class action is proper under any of the provisions of Rule 23(b).  First, the fact that plaintiffs' counsel has filed multiple individual claims on behalf of nearly one-third of the purported class members effectively forecloses their position that a class action is warranted under Rule 23(b)(1) due to the risk of inconsistent or varying adjudications. Plaintiffs do not argue in their motion that individual adjudications would threaten the interests of other purported class members.  However, the fact of the other lawsuits initiated and pursued by plaintiffs' counsel would foreclose any such argument, as well.  Similarly, plaintiffs cannot reasonably be heard to contend that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy", as provided by Rule 23(b)(3), when plaintiffs' counsel has been actively pursuing individual lawsuits on behalf of individual PCB claimants.  Lastly, a class action is not available under Rule 23(b)(2) since, although plaintiffs purport to seek equitable relief, the predominate relief they seek is monetary damages.  <u>See</u> <u>Wal-Mart</u>, 131 S. Ct. at 2557-60 (instructing that unless merely "incidental" to the requested declaratory or injunctive relief, claims for individualized monetary damages preclude class certification under Rule 23(b)(2)).

16

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE