UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARY BRIDGES,
BOBBY GORDON,   AND
JOHNNIE GRIFFIN, ALL
INDIVIDUALLY AND ON BEHALF OF 345
OTHER NAMED PLAINTIFFS                                      PLAINTIFFS

VS.                              CIVIL ACTION NO. 3:13CV457TSL-JCG

RICHARD A. FREESE; TIM K.
GOSS; SHEILA M. BOSSIER;
DENNIS C. SWEET, III; FREESE
AND GOSS PLLC; SWEET AND FREESE
PLLC; BOSSIER AND ASSOCIATES PLLC;
AND DENNIS C. SWEET, D/B/A SWEET
AND ASSOCIATES, PLLC                                       DEFENDANTS

VS.

DON A. MITCHELL                                THIRD-PARTY DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants
Richard A. Freese, Tim K. Goss, Sheila M. Bossier, Dennis C.
Sweet, III, Freese and Goss, PLLC, Sweet and Freese, PLLC, Bossier
and Associates, PLLC, and Dennis C. Sweet d/b/a Sweet and
Associates, PLLC (hereafter defendants), to dismiss for lack of
subject matter jurisdiction pursuant to Rule 12(b)(1) of the
Federal Rules of Civil Procedure.  Plaintiffs Mary Bridges, Bobby
Gordon and Johnnie Griffin have responded in opposition to the
motion and the court, having considered the memoranda of
authorities, together with attachments, submitted by the parties,
concludes the motion is well taken and should be granted.

Background

Plaintiffs Mary Bridges, Bobby Gordon and Johnnie Griffin and 345 others were previously represented by defendants Freese, Goss, Sweet and Bossier (and their respective law firms) in litigation over PCB contamination. A global settlement of $28,000,000 was ultimately reached with the primary defendant BorgWarner Corporation. On July 23, 2013, plaintiffs Bridges, Gordon and Griffin filed the present lawsuit for themselves and on behalf of a putative class comprised of the other 345 former clients represented by defendants, asserting various claims relating to defendants' handling of litigation expenses and disbursement of settlement proceeds. Plaintiffs filed a motion for class certification on May 1, 2014, and, on November 13, 2014, following a period of discovery relating to the motion, filed a supplement to their motion. On March 26, 2015, the court issued its memorandum opinion and order denying the motion for class certification, finding that plaintiffs had failed to satisfy Federal Rule of Civil Procedure 23(a)'s requirements of numerosity and adequacy of representation. Defendants have now moved to dismiss, contending the court does not have subject matter jurisdiction over the claims of the three individual plaintiffs because none of them satisfies the $75,000 amount in controversy requirement for diversity jurisdiction set forth in 28 U.S.C. § 1332(a).

Standards

Plaintiffs have argued in response to defendants' motion that in determining whether jurisdiction exists, the court is limited to consideration of their complaint and may not consider evidence adduced by defendants. They are mistaken. A motion to dismiss for lack of subject matter jurisdiction may be based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Carroll v. Abide, 788 F.3d 502, 504 (5th Cir. 2015) (internal quotation marks and citations omitted). A motion to dismiss based on the complaint alone presents a "facial" attack, and requires the trial court "merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). In contrast, a "factual attack" "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980). "Unlike in a facial attack where jurisdiction is determined upon the basis of the allegations of the complaint, accepted as true when a factual attack is made upon federal jurisdiction, no presumptive truthfulness attaches to the plaintiffs' jurisdictional

3

allegations, and the court is free to weigh the evidence and
satisfy itself as to the existence of its power to hear the case."
Evans v. Tubbe, 657 F.2d 661, 663 (5th Cir. Unit A Sept.1981); see
also In re The Complaint of RLB Contracting, Inc., as Owner of the
Dredge Jonathan King Boyd its Engine, Tackle, Gear for Exoneration
or Limitation of Liability, 773 F.3d 596, 601 (5th Cir. 2014) ("On
issues involving jurisdiction, the district court may consider
evidence outside the pleadings and resolve factual disputes.").
"A 'factual attack' under Rule 12(b)(1) may occur at any stage of
the proceedings," Menchaca, 613 F.2d at 511, and to defeat a
"factual attack" on jurisdiction, plaintiffs must "submit facts
through some evidentiary method ... proving by a preponderance of
the evidence that the trial court does have subject matter
jurisdiction." Paterson, 644 F.2d at 523.  Thus, while "[t]he
plaintiff's burden to demonstrate that the court has jurisdiction
is '[n]ormally ... satisfied if the plaintiff claims a sum greater
than the jurisdictional requirement[,]'" Warrior Energy Servs.
Corp. v JC Fodale Energy Servs., Cv. No. 5:14-CV-911-DAE, 2015 WL
869146, at *2 (W.D. Tex. Feb. 27, 2015) (quoting White v. FCI USA,
Inc., 319 F.3d 672, 674 (5th Cir. 2003)), and "[a] claim for
damages made in apparent good faith controls the jurisdictional
question[,]" Jouett Investments Inc. v. Intuit Inc., Civ. Action
No. 3:14-CV-1803-L, 2015 WL 3770715, at *6 (N.D. Tex. June 15,
2015),

4

when "it appears or is in some way shown that the amount stated in the complaint is not claimed in 'good faith,'" ... courts may look beyond a plaintiff's allegations. <u>Horton v. Liberty Mut. Ins. Co.</u>, 367 U.S. 348, 353, 81 S. Ct. 1570, 6 L. Ed. 2d 890 (1961) (quoting <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 288, 58 S. Ct. 586, 82 L. Ed. 845 (1938)). Dismissal of an alleged diversity action for lack of jurisdiction is proper when it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." <u>Id.</u> (quoting <u>St. Paul Mercury Indem. Co.</u>, 303 U.S. at 289). Claimed damages necessarily fall short of the jurisdictional amount when disregarding any asserted defense, there is a legal certainty "that the plaintiff cannot recover the amount claimed", or "that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction." <u>De Aguilar v. Boeing Co.</u>, 47 F.3d 1404, 1409 (5th Cir. 1995) (quoting <u>St. Paul Mercury Indem. Co.</u>, 303 U.S. at 289). When determining the amount in controversy, the courts may apply common sense to the allegations, <u>Allen v. R & H Oil & Gas Co.</u>, 63 F.3d 1326, 1336 (5th Cir. 1995), and "may look, not only to the face of the complaint, but to the proofs offered by the parties." <u>U.S. Fire Ins. Co. v. Villegas</u>, 242 F.3d 279, 283 (5th Cir. 2001). The amount in controversy includes all damages available under the law governing the suit, but the party seeking to invoke the court's jurisdiction must rely on more than conclusory allegations to establish jurisdiction. <u>St. Paul Reinsurance Co., Ltd. v. Greenberg</u>, 134 F.3d 1250, 1254-55 (5th Cir. 1998).

<u>Id.</u> at *7.

"Regardless of whether the attack is facial or factual, the party asserting federal jurisdiction 'constantly bears the burden of proof that jurisdiction does in fact exist.'" <u>Ramirez v. Lone Star Pediatrics, P.A.</u>, No. 3:13-cv-2035, 2014 WL 1281510, at *3 (N.D. Tex. Mar. 31, 2014) (quoting <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)).

5

Diversity Jurisdiction - Amount in Controversy

The diversity jurisdiction statute, 28 U.S.C. § 1332(a), "instructs that a suit between diverse parties may be adjudicated in a federal forum only if 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'" Garcia v. Koch Oil Co. of Texas Inc., 351 F.3d 636, 638 (5th Cir. 2003) (quoting § 1332(a)). "The party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000." Id. (citing St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998)). Here, defendants do not dispute the existence of diversity of citizenship between the parties but maintain that plaintiffs are unable to satisfy the amount in controversy requirement because they cannot prove that any one of them presents claims that satisfy the amount in controversy requirement.[1] The question, therefore, is whether plaintiffs have

---

[1]  "[W]hen multiple claimants exist, the general rule is that their 'separate and distinct claims ... cannot be aggregated in order to satisfy the jurisdictional amount requirement.'" Alfa Ins. Corp. v. Stedman, Civ. Action No. 2:14cv138-DPJ-FKB, 2015 WL 3952938, at *1 (S.D. Miss. June 29, 2015 (quoting Snyder v. Harris, 394 U.S. 332, 335 (1969)). If at least one of the plaintiffs satisfies the amount in controversy requirement, then the court may exercise supplemental jurisdiction over the claims of other plaintiffs who do not independently satisfy the amount in controversy requirement, if the claims are part of the same Article III case or controversy. Exxon Mobil Corp. v. Allapattah Servs., Inc.,   545 U.S. 546, 558-59, 125 S. Ct. 2611, 162 L. Ed. 2d 502 2620 (2005).

proven by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.

<u>Analysis</u>

Plaintiffs' myriad causes of action in this case,[2] and the relief they seek based on those causes of action, all relate to the following basic allegations: (1) defendants overcharged them for litigation expenses; (2) defendants had a conflict of interest in the handling of claimants' Medicaid and Medicare liens with the result that plaintiffs were or may have been overcharged; (3) defendants reimbursed themselves for expenses and paid themselves attorneys' fees before disbursing settlement funds to their clients, including plaintiffs; and (4) defendants failed to deposit the settlement proceeds in an interest-bearing account for the benefit of their clients and instead, had the money deposited in an out-of-state bank owned by Richard Freese and enjoyed the use of the money, interest free, pending disbursement of funds to their PCB clients.

In connection with their allegations relating to defendants' alleged mishandling of litigation expenses and Medicaid and

---

[2]     Plaintiffs' complaint includes the following putative causes of action:  I. Breach of Fiduciary Duty; II. Tort of Outrage/Breach of Attorney Client Contract; III.  Reckless and Fraudulent Inducement; IV. Wrongful Conversion; V. Tortious Interference with the Original Attorney Contract; VI. Reckless Indifference; VII. Unjust Enrichment; VIII.  Bad Faith; IX. Request for Preliminary Injunction.

Medicare liens, plaintiffs seek an award of compensatory damages.[3]
In addition, plaintiffs request an accounting, injunctive relief,
and punitive damages in the amount of $1,000,000.

    With respect to litigation expenses, plaintiffs allege they
were charged for some expenses that were not legitimate and/or
reasonable and that they were charged more than their *pro rata*
share of common benefit expenses.  As relief, they seek "an
accounting of the expenses and require the Defendants pay all
expenses that they had agreed that all claimants would be involved
in sharing" or that defendants "forfeit their re-imbursement of
all expenses and monies that they were obtained [sic] for alleged
expenses."  Plaintiffs declare that defendants "should be assessed
in excess of one million dollars or the total amount of expenses
claimed."  Clearly there is no factual or legal basis for
assessing defendants "in excess of one million dollars" for
expenses as defendants did not receive "in excess of one million
dollars" in expenses.  Rather, the total amount of litigation
expenses recovered by defendants from the settlement proceeds in

---

    [3]    Based on their allegation that defendants failed to
deposit BorgWarner settlement payments in an interest-bearing
account for plaintiffs' benefit pending disbursement of those
funds, plaintiffs arguably are seeking as compensatory damages
the amount of the interest of which they were consequently
deprived.  However, as discussed infra, plaintiffs also allege (or
at least intimate) that defendants did not timely remit to
plaintiffs their shares of the settlement proceeds; an award of
interest due to such delay would subsume plaintiffs' claim for
damages stemming from defendants' failure to deposit the
settlement funds in an interest-bearing account.

the PCB litigation was $808,600.  However, plaintiffs plainly have
no standing to request the return of the full $808,600.  They have
standing to recover no more than the total amount of expenses they
were each charged.  Records presented by defendants show that
Bridges was charged a total of $401.15 in expenses; Gordon was
charged $2,182.78 for expenses; and the total of expenses charged
to Griffin was $3,526.06.

Plaintiffs additionally request that defendants be required
to "account for and be assessed" and/or to forfeit their
reimbursement of all monies paid for the liens for Medicaid and
Medicare.  However, the evidence shows that no deduction was made
from any of these plaintiffs' settlement proceeds for any Medicaid
lien, and only Johnnie Griffin was subject to a deduction for a
Medicare lien.  The amount of that deduction was $4,511.16.

In their response to defendants' motion, plaintiffs
implicitly acknowledge that these claimed compensatory damages do
not exceed the jurisdictional minimum.  They contend, however,
that they "easily meet and exceed the jurisdictional minimums with
their claims for injunctive relief and punitive damages."

Regarding their putative request for injunctive relief,
plaintiffs point out that in their complaint, they have alleged
that defendants, five days after receiving the first installment
of $14,000,000 in settlement funds from BorgWarner in November
2011, reimbursed themselves for expenses totaling $808,600 and

9

paid themselves attorneys' fees of $6,903,876.81, which they then used for their own personal benefit (including to pay off lines of credit of over $1,000,000), and yet defendants "were in no hurry" to disburse settlement proceeds to plaintiffs.  Indeed, say plaintiffs, defendants knew it would take a lengthy period of time to disburse funds to their PCB clients, but rather than depositing the settlement funds in an interest-bearing account for their clients' benefit, defendants instead kept the money in an out-of-state bank owned, in part, by defendant Richard Freese, thereby generating interest and profits (directly or indirectly) for Freese and other defendants.  Plaintiffs allege that by "[taking] their monies prior to any disbursements to any clients," and by then failing to deposit the remaining settlement proceeds in an interest-bearing account for the benefit of defendants' PCB clients, defendants unjustly enriched themselves to the detriment of their clients, including plaintiffs.  Relative to these allegations, plaintiffs "request an accounting be directed to determine the Defendants' interests and profits as a result of their actions."

Plaintiffs note in their response that in actions seeking injunctive relief, "'it is well established that the amount in controversy is measured by the value of the object of the litigation.'"  Nationstar Mortg. LLC v. Knox, 351 Fed. App'x 844, 848 (5th Cir. 2009) (quoting Hunt v. Wash. State Apple Adver.

Comm'n, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383
(1977)).  When the object of the litigation is a right to
property, the amount in controversy is measured by the value of
the property.  Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir.
1983).  And "when ... a right to property is called into question
in its entirety, the value of the property controls the amount in
controversy".  Id. (quoting Waller v. Prof'l Ins. Corp., 296 F.2d
545, 547–48 (5th Cir. 1961)) (alteration added).  Based on these
principles, plaintiffs declare that "the entire amount of the
object of [their] requests for injunctive relief should be applied
to satisfy the jurisdictional threshold"; and they reason that
since they seek injunctive relief both as to "the over $6,900,000
in attorneys' fees" and "the over $800,000 in expenses reimbursed
to Defendants," then the individual amount in controversy for each
of them as to the claims for injunctive relief relating to the
attorneys' fees and expenses, respectively, is $2.3 million and
$269,533.33, for a total amount in controversy "on just the
injunctive relief alone" of $2.6 million.  Plaintiffs' position is
without merit.

Despite what they say in their response, plaintiffs do not
seek injunctive relief in their complaint either as to the
reimbursed expenses or defendants' attorneys' fees.  As to the
reimbursed expenses, they seek alternatively an accounting and

11

reimbursement of the entire $808,600.[4]  The only injunctive relief
plaintiffs seek is an order enjoining defendants, "while this
lawsuit is pending, from continuing to maintain control and use of
the Plaintiffs [sic] monies unfettered."  More particularly, they
ask that defendants be ordered "to place all monies into a
financial institution located in the State of Mississippi under
the authority of this Court or the Mississippi State Bar" to
facilitate an accounting of the funds "by a third party under the
direction of this court or the Mississippi State Bar."  Two points
are notable here.  First, defendants purport to have made final
payment to plaintiffs in July 2012 of all the settlement proceeds
due them from the BorgWarner settlement, and second, plaintiffs
have not disputed defendants' computation of the amounts of gross
settlement proceeds due them.  Their only challenges relate to
deductions from their settlement shares for litigation expenses
and Medicaid and/or Medicare liens, and to defendants' handling of
the settlement proceeds prior to disbursement to plaintiffs,
including their failure to deposit the funds in an interest-
bearing account and their delay in remitting to plaintiffs their
shares of the settlement proceeds.

The stated goal of plaintiffs' request for injunctive relief
is to facilitate an accounting.

---

[4]     The court has already concluded they have no standing to
seek reimbursement of the entire $808,600.

"An accounting is a species of compulsory disclosure, predicated upon the assumption that the party seeking relief does not have the means to determine how much—or, in fact, whether—any money properly his is being held by another.  The appropriate remedy, particularly where the determinations may be detailed and complex, is an order to account in a proceeding in which the burden of establishing the non-existence of money due to the plaintiff rests upon the defendant.  Because of the very nature of the remedy, that burden cannot rest upon plaintiff, but must shift to the defendant once facts giving rise to a duty to account have been alleged and admitted."

Garcia v. Koch Oil Co. of Texas Inc, 351 F.3d 636, 641 (5th cir. 2003) (quoting Rosenak v. Poller, 290 F.2d 748, 750 (D.C. Cir. 1961)).  The fact that plaintiffs seek an accounting involving the entire $808,600 in reimbursed expenses does not mean that $808,600 is the amount in controversy with respect to this claim.  It is not.  Rather, the amount in controversy is the disputed amount of plaintiffs' share of the $808,600.  In Garcia, an action seeking an equitable accounting based on allegations that the defendants had failed to reimburse the plaintiffs for certain oil and gas overages, the court observed that "[w]here affirmative relief is sought by an accounting, the amount in controversy is measured by the value of the res, the damage to the res sought to be redressed, or the monetary value of the complainant's share of the res which is distributable."  351 F.3d at 641 (quoting Davidson v. Blaustein, 247 F. Supp. 225, 228 (D. Md. 1965)).  The court found that "the true 'amount in controversy' is the restitution award that the defendants may be required to pay to the putative

13

class members as a consequence of removing more oil and gas
condensate from the plaintiffs' various well sites than the
defendants previously reported." Id. And, since neither party
contended that the defendants owed more than $75,000 to any single
plaintiff, there was no diversity jurisdiction. Id. In the case
at bar, the amount of expenses by which plaintiffs were
overcharged, if any, is not known; but it is known that the
expenses charged to Bridges, Gordon and Griffin were only $401.15,
$2,182.78 and $3,526.06, respectively. The amount in controversy
relative to their request for an accounting of expenses to
determine by how much they were overcharged cannot exceed these
amounts.

Moreover, it is clear from a review of the complaint that
plaintiffs do not allege that they are entitled to recover
$6,903,876.81 or any portion of the attorneys' fees that
defendants paid themselves from the PCB settlement proceeds.
Plaintiffs do allege that defendants' action of paying themselves
first, prior to disbursing settlement proceeds to plaintiffs, was
a breach of their fiduciary obligation to plaintiffs, and they go
on about defendants' having benefitted financially from receiving
these attorneys' fees. But there is no allegation that defendants
were not entitled to recover these attorneys' fees or to challenge

14

the amount of attorneys' fees defendants received.[5]  And again,

_____

[5]     Notably, in <u>Windom v. Freese & Goss, PLLC, et al.</u>,
3:13-cv-741-CWR-FKB (S.D. Miss.), a related case involving similar
allegations by PCB claimants relating to defendants' handling of
the BorgWarner settlement, plaintiffs' counsel, in arguing for
remand, stated that the plaintiffs therein were not claiming they
were entitled to the $6,900,000 that defendants received in
attorneys' fees.  Counsel stated:

> [A] full reading of Plaintiffs' Complaint shows that at
> no point in Plaintiffs' Complaint do the Plaintiffs
> claim that they are entitled to the $6,900,000 as
> damages.  The $6,900,000 figure, rather than a claim for
> compensatory damages, is a factual assertion in support
> of claims regarding the Defendants' wrongdoing that
> Defendants deposited $6,900,000 of the $14,000,000
> received as a result of the Kuhlman settlement into
> their own accounts prior to distribution of settlement
> fund [sic] to the claimants.  The purpose of including
> this fact in the Complaint was to serve as further proof
> that the actions of the Attorney Defendants pursuant to
> the settlement of the Kuhlman litigation were negligent,
> wanton and reckless, as the act of depositing settlement
> funds into the personal account of an attorney prior to
> distribution of funds to clients, regardless of whether
> such funds rightly belong to the attorneys, is
> well-known regardless of the jurisdiction as an improper
> act.  Defendants cannot cite any part of the Plaintiffs'
> Complaint in which the Plaintiffs claim they are
> entitled to $6,900,000 as compensatory damages.
> Defendants have not met their burden of proving that the
> entire $6,900,000 is in controversy among the 288
> Plaintiffs in the instant civil action.

<u>See</u> Pls.' Reply in Support of Motion to Remand, pp. 6-7.
Counsel's assertion in <u>Windom</u> is consistent with the undersigned's
reading of the complaint herein.  That is, plaintiffs do not claim
that they have any right to any portion of the attorneys' fees
received by defendants; they claim only that defendants should not
have paid themselves first.  <u>See</u>, <u>e.g.</u>, Amended Complaint ¶ 30
("The Defendants took their monies out immediately but allowed
their bank to use the clients' money interest free."); ¶ 31
("Without disbursing any monies to their clients or notifying
anyone, they immediately paid themselves ...."); ¶ 47 ("These
Defendants took their monies prior to any disbursements to any
clients.").

15

plaintiffs do not seek injunctive relief relating to the
$6,903,876.81 in attorneys' fees received by defendants from the
settlement proceeds.

Plaintiffs do allege that defendants were "unjustly enriched"
to the extent they were able to use the $6,903,867.81 in
attorneys' fees to "pay off loans or lines of credit" and to
"[invest] their monies and [operate] their numerous
businesses....," all to the detriment of plaintiffs, who were
deprived of "the timely use of said monies owed to them."  They
seek an accounting to determine "the Defendants [sic] interests
and profits as a result of their actions."  The fact is, however,
plaintiffs do not allege that defendants were not entitled to
recover their full attorneys' fee, and there is no basis for an
allegation that defendants were not entitled to use their own
money as they saw fit.  Plaintiffs' only real complaint relating
to the attorneys' fees is that defendants paid themselves first.
Plaintiffs insinuate that as a result, they were delayed in
receiving their own settlement monies.  But even if that were so,
plaintiffs' remedy, if any, would be to recover interest on their
share of the settlement money during the period of any proven
delay.  See Holcomb v. McClure, 217 Miss. 617, 64 So. 2d 689, 692
(Miss. 1953) (recognizing general rule that interest is given for
damages for delay in payment).  This amount would add relatively
little to the amount in controversy.  Bridges' share of the

settlement, less attorneys' fees, was $7,649.33 which she received in four payments.[6]  Assuming hypothetically, an interest rate of 10% on this amount from the time settlement monies were first received by defendants until final disbursement to Bridges, she would recover interest of $416.51.  Gordon's share of the settlement, less attorneys' fees, was $25,697.52.[7]  With the same assumptions as before, his interest recovery would be $1,319.40. Griffin's total recovery, less attorneys' fees, was $36,384.32, so that his interest recovery, with the same assumptions, would be $1,953.94.[8]  In the court's opinion, these figures respectively, and not $6,903,876.81, represent the amount in controversy as to each plaintiff's claim(s) relating to defendants' having immediately taken their attorneys' fees from the first settlement monies received from Borg Warner.

Plaintiffs next argue that the amount in controversy is clearly met, as they have demanded, in addition to their requests for compensatory damages and injunctive relief, punitive damages of $1,000,000.  See St. Paul Reinsurance Co., 134 F.3d at 1253

---

[6]   Bridges received this sum in four payments, as follows: $2,614.27 on April 13, 2011; $3,015.42 on October 14, 2011; $1,000 on April 3, 2012; and final payment of $1,019.64 on July 12, 2012.

[7]   Gordon received the following payments: $9,710.14 on April 14, 2011; $11,200.13 on October 14, 2011; $1,000.00 on April 3, 2012; and $3,797.25 on July 12, 2012.

[8]   Griffin received the following payments: $15,685.60 on April 14, 2011; $13,580.85 on December 14, 2011; $1,000.00 on May 8, 2012; and $6,117.87 on July 12, 2012.

(punitive damages are included in calculation of amount in controversy).  For their part, defendants maintain that the proper way to factor plaintiffs' $1,000,000 punitive damages demand in the amount in controversy calculus is to divide that figure by 348, the number of intended plaintiffs at the time this case was filed as a putative class action, which results in a claim by each plaintiff herein to $2,873.56 in punitive damages.  Obviously, as defendants note, this amount, added to each plaintiff's individual compensatory damages claim, would not even begin to approach the amount in controversy required to support diversity jurisdiction.  However, citing State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003), and BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996), defendants submit that even if plaintiffs claim that each of them is individually seeking $1,000,000 in punitive damages, it is clear from the nominal amount of compensatory damages that plaintiffs would be entitled to recover, if any, that such an extraordinary punitive damages award would be constitutionally impermissible.

    In response, plaintiffs dispute defendants' assertion that their punitive damages demand should be prorated at all and insist that the punitive damages claimed should be aggregated, with the entire amount of punitive damages sought being aggregated to each plaintiff in order to determine the amount in controversy.  See

18

Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1334-35 (5th Cir.
1995) (holding that the nature of punitive damages under
Mississippi law requires that punitive damage claims of all
plaintiffs in a Mississippi multi-plaintiff action be aggregated,
with the entire amount of punitive damages sought being allocated
to each plaintiff in order to determine the amount in
controversy).  They argue, though, that even if their punitive
damages demand cannot be aggregated but must instead be allocated
pro rata among the plaintiffs to determine whether the
jurisdictional amount in controversy is met, then their $1,000,000
must be allocated pro rata only among the three named plaintiffs
since the court denied their motion for class certification; in
that case, each plaintiff would be requesting $333,333 in punitive
damages, so that the amount in controversy would be well above the
$75,000 threshold for federal diversity jurisdiction.

     In the court's opinion, it is unnecessary to determine
whether or how to allocate plaintiffs' claim for punitive damages,
since it is clear that plaintiffs, consistent with due process,
cannot receive an award of punitive damages that would push the
amount in controversy above $75,000.[9]  Plaintiffs maintain that

---

     [9]     With that said, the court is of the opinion that under
Mississippi law, punitive damages claims of multiple plaintiffs
are aggregated to determine the amount in controversy.  In Allen
v. R & H Oil & Gas Co., 63 F.3d 1326 (5th Cir. 1995), the Fifth
Circuit held that the nature of punitive damages under Mississippi
law required that the punitive damage claim of all plaintiffs
should be aggregated, and the entire amount allocated to each

plaintiff, to determine the jurisdictional amount.  Subsequently,
a panel of the Fifth Circuit found in <u>H&D Tire and
Automotive-Hardware, Inc. v. Pitney Bowes Inc.</u>, 227 F.3d 326, 330
(5th Cir. 2000), that <u>Allen</u> conflicted with an earlier panel
opinion in <u>Lindsey v. Alabama Telephone Co.</u>, 576 F.2d 593 (5th
Cir. 1978), which had reasoned that a claim for punitive damages
must be allocated pro rata among class members to determine
whether the jurisdictional requirement is met.  The panel in <u>H&D
Tire</u> found it was bound to follow <u>Lindsay</u>, as it was the earlier
of the two opinions.  However, in its opinion denying rehearing <em>en
banc</em> in <u>H&D Tire</u>, the Fifth Circuit stated that <u>Allen</u> is not
contrary to the law of the Fifth Circuit that the damages claims,
including punitive damages claims, of individual class members
cannot be aggregated to satisfy the amount in controversy,
explaining that "<u>Allen</u> was limited—by the panel that decided it—to
the unique circumstances of Mississippi law," <u>id</u>. at 304-05, which
treats punitive damages claims as collective.  <u>H&D Tire and
Automotive-Hardware Inc. v. Pitney Bowes Inc.</u>, 250 F.3d 302,
304-05 (5th Cir. 2001).  <u>See also</u>  <u>Ard v. Transcontinental Gas Pipe
Line Corp.</u>, 138 F.3d 596, 602 (5th Cir. 1998) (stating, "It is
therefore clear to us that <u>Allen</u> departs from <u>Lindsey</u> solely
because of the peculiar nature of punitive damages under
Mississippi law, and does not purport to establish a precedent for
aggregation of punitive damage claims asserted under federal law
or the law of any other state.").  While one recent case has held
to the contrary, <u>see Mississippi ex rel. Hood v. AU Optronics
Corp.</u>, 876 F. Supp. 2d 758, 775 (S.D. Miss. 2012) (stating that
"<u>Allen</u> was determined to conflict with a previous panel decision
and therefore is no longer good law" on this issue), in the
undersigned's opinion, and as most other cases have held, <u>Allen</u>
remains the law for cases governed by Mississippi law.  <u>See</u>, <u>e.g.</u>,
<u>In re FEMA Trailer Formaldehyde Products Liab. Litig.</u>, MDL No.
07-1873, 2012 WL 1204734, at *5 (E.D. La. Apr. 11, 2012) (holding
that "because the punitive damage claim is brought under
Mississippi law, the Court is required to treat the prospective
punitive damage award as a collective award and, thus, attribute
the entire award to each individual plaintiff for purposes of
determining jurisdictional amount") (citing <u>Allen</u>, 63 F.3d at
1334-35); <u>Thomas v. NBC Universal, Inc.</u>, 694 F. Supp. 2d 564, 567
(S.D. Miss. 2010) ("[I]n suits involving multiple plaintiffs
seeking punitive damages under Mississippi law, the court is
required to aggregate the plaintiffs' claims for punitive damages
in determining the amount in controversy."); <u>Carpenter v. Rocky
Mountain Radar, Inc.</u>, No. 4:05CV01-M-B, 2007 WL 551762, at *2
(N.D. Miss. Feb. 21, 2007) (stating, "It is true that the Fifth
Circuit has held a differing result to apply under the law of

the court, in determining the amount of punitive damages in
controversy, may look *only* to the face of the complaint.  They
insist that defendants' arguments regarding the constitutionality
of the punitive damages sought in the complaint are "immaterial,
premature and ha[ve] no application to" the amount in controversy
inquiry.  Indeed, they declare there is "no case law that states
that a court must look beyond the face of the complaint ... to
determine whether an eventual award of the requested punitive
damages would be ... constitutional."  However, as "[c]laimed
damages necessarily fall short of the jurisdictional amount when
... there is a legal certainty 'that the plaintiff cannot recover
the amount claimed'," see Jouett Investments Inc., 2015 WL
3770715, at *7 (quoting De Aquilar v. Boeing Co., 47 F.3d 1404,
1409 (5th Cir. 1995)), it is apparent that consideration of
whether the punitive damages plaintiffs have demanded would be
recoverable is clearly proper.  There is ample authority so
holding.  See, e.g., Mississippi ex rel. Hood v. AU Optronics
Corp., 876 F. Supp. 2d 758, 776 (S.D. Miss. 2012) (stating that

---

other states in this circuit, but Allen clearly supports
aggregation of punitive damages under Mississippi law."); Amos v.
Citifinancial Corp., 243 F. Supp. 2d 587, 590 (N.D. Miss. 2003)
(stating that "in suits involving multiple plaintiffs seeking
punitive damages under Mississippi law, the court is required to
aggregate the plaintiffs' claims for punitive damages in
determining the amount in controversy); Agnew v. Comm'l Credit
Corp., 2002 WL 1628537 *2-3 (S.D. Miss.2002) ("Allen remains the
law for cases in which punitive damages are sought under
Mississippi law .").

"assuming that the maximum punitive damages allowed under due process would apply, an individual claim could remain in state court by seeking only an amount of restitution, plus a punitive damages multiplier in accordance with <u>Campbell</u>, that totals $75,000 or less"); <u>Blackwell v. Great American Fin. Resources, Inc.</u>, 620 F. Supp. 2d 1289, 1291 (N.D. Ala. 2009) (holding that "it is the constitutionally-permissible limits of punitive damages in a particular case that are used to compute the jurisdictional amount-in-controversy requirement"); <u>Register v. Rus of Auburn</u>, 193 F. Supp. 2d 1273, 1274–78 (M.D. Ala. 2002) (holding that only constitutionally-permissible ranges of punitive damages can be used to determine whether amount in controversy is satisfied); <u>Killoran v. Century Debt Consolidation</u>, No. CV 112–128, 2013 WL 150715, at *4-5 (S.D. Ga. Jan. 14, 2013) (granting motion to remand, and stating that "[f]or Defendants' notice of removal to have any merit, the Court would have to allow punitive damages in an amount [that is] almost certainly beyond Constitutional limitation"); <u>Manuel v. Gembala</u>, No. 7:10-CV-4-FL, 2010 WL 3860407, at *8-10 (E.D.N.C. Sept. 30, 2010) (holding that where "amount of punitive damages necessary to meet the amount in controversy requirement would be unconstitutional if awarded, it is clear to a legal certainty that the plaintiffs can not recover the jurisdictional minimum of $75,000.00").

As defendants note, any award of punitive damages must comport with the prohibition in the Due Process Clause of the Fourteenth Amendment on "grossly excessive or arbitrary punishments on a tortfeasor." Campbell, 538 U.S. at 416, 123 S. Ct. 1513 (citing Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433, 121 S. Ct. 1678, 1684, 149 L. Ed. 2d 674 (2001) ("Despite the broad discretion that States possess with respect to the imposition of criminal penalties and punitive damages, the Due Process Clause of the Fourteenth Amendment to the Federal Constitution imposes substantive limits on that discretion."); see also Gore, 517 U.S. at 581, 116 S. Ct. 1589 (instructing courts to consider three factors when reviewing the constitutionality of punitive damage awards: "(1) the degree of the reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in a comparable case"). While the Supreme Court has been "reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award," Campbell, 538 U.S. at 424, 123 S. Ct. at 1513, and has specifically declined to impose "a bright-line ratio which a punitive damages award cannot exceed," Campbell, id. at 425, 123 S. Ct. 1513, it has held

23

that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," id., 123 S. Ct. 1513. Moreover, the Court has indicated that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety," Pacific Mut. Life Ins. v. Haslip, 499 U.S. 1, 23-24, 111 S. Ct. 1032, 1046, 113 L. Ed. 2d 1 (1991).

In the case at bar, even if the court were to assume that plaintiffs could recover *all* the expenses charged to them by defendants (and not just the amounts by which they were overcharged), and that they could recover 10% interest for the delay between defendants' receipt of settlement proceeds and disbursement of same to plaintiffs, their compensatory damages would be insufficient to support an award of constitutionally permissible punitive damages that would put the amount in controversy above $75,000.  Bridges' compensatory damages would total $817.66, requiring a punitive damages award of more than 91 times her compensatory damages to exceed $75,000.  Gordon's compensatory damages would total $3,502.18, so that his punitive damages award would have to total more than 21 times his compensatory damages to exceed $75,000.  Clearly neither award would comport with due process.  See Kalick v. Northwest Airlines Corp., 372 Fed. App'x 317, 321-22  (3d Cir. 2010) (stating that

"[e]ven assuming that Kalick could recover twice the amount of compensatory damages he requests, or approximately $2900, his maximum punitive damages would leave him well short of the amount in controversy requirement."); Shirwo v. JP Morgan Chase Bank, Inc., No. 09-4345, 2009 WL 2365688 (C.D. Cal. July 30, 2009) (remanding case for insufficient amount in controversy where the plaintiff alleged merely $1,041.58 in actual damages and at least $75,000 in punitive damages in an attempt to clear the jurisdictional threshold).  It is a closer call for Griffin, whose compensatory award would be $9,991.16, requiring a punitive damages award of more than 7.5 times his compensatory award to top $75,000.  In the court's opinion, however, for a number of reasons based on the particular facts of this case, a punitive damages award of this amount would not be constitutionally permissible. See McMahon v. Westgate Resorts, Inc., No. 2:13-cv-02304-GMN-GWF, 2014 WL 3721372, at *4 (D. Nev. July 24, 2014) (finding on motion to remand that since plaintiffs sought compensatory damages of $13,165.96, then punitive damages would have to exceed $61,834.04 to cross the $75,000 threshold, "a ratio of at least 4.7:1, which appears to be at the very limits of constitutional propriety" and finding that defendants had failed to show that such a high punitive damages ratio was applicable).  First, despite the characterization by plaintiffs' counsel, it is evident from the evidence of record in this case that in bringing this action,

plaintiffs themselves did not consider this case to involve especially egregious misconduct by defendants.  In fact, as the court observed in its opinion denying class certification, plaintiffs herein did not seek out counsel to file suit but rather were solicited to do so, and they do not appear to be more than vaguely aware (if at all) of how they have allegedly been wronged. Moreover, the allegations in this case involve purely economic harm.  And in this vein, in their demand for compensatory damages relating to the reimbursed expenses and Medicaid/Medicare liens, plaintiffs have requested not only recovery of the actual amounts by which they were allegedly overcharged but also forfeiture by defendants of *all* expenses charged to plaintiffs and the *entire amount* of any Medicaid/Medicare liens.  The court's assumption regarding compensatory damages that plaintiffs could recover these sums already includes an element of punishment and deterrence.[10] For their part, plaintiffs have failed to identify any facts that

---

[10]     Had the court not made these assumptions, each plaintiff's potential compensatory damages award would certainly be less.  Each of the plaintiffs agreed to pay their share of expenses for the PCB litigation, and without question, defendants incurred significant proper expenses in pursuing the litigation. Moreover, Griffin's recovery was subject to a Medicare lien in some (unknown) amount, which was required to be satisfied from his share of the recovery.  Obviously, the less each plaintiff's compensatory damages, the higher the amount of punitive damages required to reach the $75,000 threshold for diversity jurisdiction, and the higher the ratio of punitive to compensatory damages.

would support a punitive damages award of more than 7.5 times Griffin's claimed compensatory damages.

Conclusion

In conclusion, based on all of the foregoing, the court finds that plaintiffs have failed to establish that the amount in controversy exceeds $75,000.[11]   Therefore, it is ordered that defendants' motion to dismiss is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 10th day of August, 2015.


                              /s/ Tom S. Lee
                              UNITED STATES DISTRICT JUDGE

---

[11]   Plaintiffs' complaint includes a demand for attorneys' fees; and "the general rule ... is not quite settled ... that the amount expended for attorney's fees are a part of the matter in controversy for subject matter jurisdiction purposes when they are provided for by contract or by state statute or otherwise as a matter of right, since these are part of the liability being enforced."  14AA Charles Alan Wright & Alan R. Miller, Federal Practice & Procedure § 3712 (4th ed. 2015).  Defendants state in their motion that there is no contractual or statutory basis for plaintiffs' demand for attorneys' fees and in their response, plaintiffs do not dispute this.